May it please the court, my name is Sarah Lathrop. I'm an assistant Minneapolis City Attorney. I represent the appellant Minneapolis police officers in this case. Those officers have been deprived of their right to have the facts of this case and their conduct measured against the elements of the crimes with which Mr. Johnson was charged. And a determination of whether any reasonable officer, any competent officer could conclude that those offenses had been conducted. That was not done by the district court in this case and this court must examine the record, Mr. Johnson's admissions and the videotapes to see if any reasonable officer could have so concluded such that the officers are entitled to qualified immunity. Is there a clearly defined standard of review of the videotapes? You assert time and time again in the brief that they're absolutely clear as to the relevant circumstances. And that's completely contrary to obviously your opposing counsel's brief, but also the district court's decision, opinion. What do we do with that? Do we, can we just look at them and say, well, this is de novo? I don't think so. Your Honor, the case Scott v. Harris from the U.S. Supreme Court. Which case? Scott v. Harris. Yeah, well, everybody talks about Scott, but Scott was extreme. Well. Scott doesn't establish the Supreme Court too frequently, does not clearly establish a standard review for the next hundred cases. Your Honor, I believe the rule of law under Scott v. Harris and this court has applied it. For instance, in the case Ransom v. Grisafe, I believe it's called, that where the videotape shows that one of the party's version of facts is blatantly contradicted. And so that would be the standard review that the court need not assume for the purposes of summary judgment that that version of facts is part of the record. I would concede that not every aspect of the videotape is 100% clear, but I think what is very clear. Have you found an appellate decision that meaningfully analyzes what blatantly contradicted means when an appellate court is looking at a video or a document for that matter? Your Honor, I. I mean, there's a lot of cases that say when we're looking at documents, you know, why are we any different than the district court? I think a video, that's a stronger assertion with respect to a document, frankly, than a video. Your Honor, what I would say in this case, I think it's extremely clear in this case how it could be applied. For instance, in the excessive force claim regarding the tasing outside of the bar. Mr. Johnson's testimony was that he sat down on the planter, was immediately tased, and fell to the ground. If you look at the videotape, and I even included stills as part of my addendum, that is blatantly contradicted by the videotape. But that's just one testimony. That doesn't establish that the officer's view was true. No, but when the district court is weighing and balancing at summary judgment, you've got the officer's view, and you've got the plaintiff's testimony, or any other testimony he claims supports his testimony, and if those stories are blatantly contradicted by the video, the court is supposed to throw them out. That's what the case law says. He clearly was not immediately tased and fell to the ground. You can see him stand up, turn around, and run off camera. And so the court must disregard... Do you think you can see on the video that he runs away? Yes, Your Honor. Where can you see that? I realize there's technological challenges in this case, but if you look at the video and you do it frame by frame, you can see Mr. Johnson's knees. He stands up, he turns around, and he goes off camera on his own power. How is that running away? The officers are approaching him to try to arrest him, and he stands up and runs away. How do you know that? Well, if you look at the officer's testimony, they told him, I'm under arrest. You're under arrest. But the point is that he says that he sat down, was immediately tased in the back, and fell to the ground. Yeah, but what you're saying is if the video contradicts his testimony, then the officers are to be believed. No. That doesn't follow. No, Your Honor, I would say... Because the video doesn't... If the video doesn't show what the officers say, then there could still be a genuine dispute of fact, even though Johnson's testimony is inaccurate because it's still not clear what happened. Some fact finders are going to have to decide, well, Johnson says one thing, the video doesn't corroborate that. The officers say another thing, the video doesn't corroborate that. What happened? Thank you, Your Honor. So, the video blatantly contradicts Johnson's testimony. So, Scott says, and the progeny of Scott say, you then do not accept for the purposes of summary judgment the blatantly contradicted part, okay? There's nothing in the video that blatantly contradicts the officer's testimony. So, you're left with the officer's testimony. Whether or not the video shows all of the officer's testimony... No, you're not. I mean, on the qualified immunity, when does a fact dispute preclude appellate review at this time of qualified immunity? What you're saying is just wrong. Your Honor... We don't have to accept the officers because the video blatantly contradicts Johnson. Scott doesn't say that. You wouldn't find a case anywhere that says that. No, what the case is saying, Your Honor, is that if the officers tell a story, the court can't deny summary judgment just hoping on the belief that the jury would disbelieve the officers. If the only admissible evidence before the court is the officer's statements, you can't deny summary judgment on the basis that there's a fact dispute if the other side is blatantly disregarded by the video. Well, is that the only thing Johnson says? Yeah. That it happened immediately? I mean, doesn't he say more generally that they tased me without any good cause, I wasn't fleeing, and so forth? Well, what, no, Mr. Johnson says is that he immediately sat down, he was tased, he fell to the ground, and that he doesn't remember anything else until he was handcuffed on the sidewalk. And so there is no admissible testimony from his side of the table about that. What about all the other people there? Mr. Shoup... We have to exclude those and just believe the officers? Mr. Shoup is the only other witness the plaintiff points to to support his claim that the tasing was unreasonable. Mr. Shoup's testimony is also... What do you mean points to? We have, there's no, all the other people that were apparently deposed, they're not in the summary judgment record? At the point of summary judgment, Mr. Johnson's attorneys presented the evidence to the court that they said thought created a fact issue. They pointed to Mr. Johnson's testimony and Mr. Shoup's testimony that would support their claim that there's a fact dispute about what happened there. Mr. Johnson and Mr. Shoup's testimony is both blatantly disregarded, or blatantly contradicted by the videotape. If I could direct the court's attention, though, I don't want to lose my time. The issue of probable cause, I think, is completely central to this case. If any reasonable officer could... Can I address the delay? I'm sorry, Your Honor? Address the delay with respect to probable cause. Thank you, Your Honor. For 15 minutes. So, the standard for probable cause is objective reasonableness under the Fourth Amendment. The officer's subjective intent has no bearing on whether there was objective... Okay, but you understand... My understanding of the significance of the delay is that you have a patron, a customer, who, for one reason or another, ignores or disobeys the bouncer's instruction. It's after hours, you have to leave. The officer is called in to take over, as opposed to having an altercation between private citizens there. And the officers get him out the door. And 15 minutes later, we have the altercation at the planter. And now the argument is, well, there was probable cause to arrest him when he wouldn't go out the door in the first place. And I say that's not objectively reasonable. In this situation, 95 times out of 100, one would hope that the officers would successfully get the patron out the door instead of having to arrest. And so, even if it took gentle pushing or goading or whatever commands to do that, doesn't that dissipate the probable cause to arrest for the original refusal to leave? It does not, Your Honor. Give me a case that says that. All that the court should look at is whether, objectively, any reasonable officer would conclude that there was probable cause to arrest him for any offense. Any offense. At any time. Right. And if you look at the case... If this had been two hours later and they had been walking toward the United, the Viking Stadium, the officer still could have said, you know, you refused my command to leave. You're under arrest for what happened back at 7. The elements of trespass had been established at the time that Mr. Johnson refused Mr. Webster's command. Give me the Eighth Circuit case that supports this argument that I find highly... I believe, Your Honor... Proper. Oh, excuse me. We cited... This is... The elements... What the court would look at, because it's an issue of qualified immunity... All the elements. I want a case that addresses this delay effect. I'm explaining why I'm going to cite a Minnesota case. Because this is whether the officer could believe, any reasonable officer could believe that he could have arrested Mr. Johnson at that time. Stately brag. Do you have a case with a delay factor where the analysis of the object of reasonableness discusses the fact that the officer chose to peacefully eliminate the trespass and refusal to leave, and then a significant amount of time later decided, I'm going to arrest you for that? The case that I rely on is that it doesn't matter if the subjective intent of the officer was that there was a delay. You take that answer as no, you don't have a case. No, I disagree, Your Honor. If the elements are met, there was arguable probable cause. Have a case that discusses on the facts of that case, this issue. Just yes or no. That's looking at it from the wrong perspective, Your Honor, because you have to look at it from the perspective of a reasonable officer. Respond to your argument. You have to look at it from the perspective of a reasonable officer on the scene. Could any reasonable officer have looked at what happened? Mr. Johnson was asked to leave. He refused to leave. The officers asked him to leave. He refused to leave. If you look at the elements of trespass, those elements have been satisfied at that time. There is arguable probable cause, actual probable cause that he committed that offense. What about the fact that Johnson actually says part of trespass is a claim of right, correct? And so if you look at the facts or the evidence and the light most favorable to Johnson, he's saying, I told him that I was waiting for a valet, my valet ticket, like everybody else, and that he was asserting to both the Carver and the Watson, the bouncer or the person who works there, I have a valet ticket, I have a claim of right to be here. Why don't we look at that evidence? So I cited a case in the brief. If a license to be on the premises has been revoked, you no longer have a claim of right. But isn't that, too, in dispute, whether it was revoked? Absolutely not. And this is just like the casino case that I cited, which is Borgman v. Kelly. The plaintiff in that case said, I thought I had a right to be in this casino. And the court said, this court said, no, the officer doesn't have to try to work this out. If the doorman says you have to go, you have to go. This court is not for dealing with whether Mr. Webster, the doorman, was wrong about having a valet ticket. Once he was told he couldn't stay in there and wait for his car anymore, that license has been revoked. And so he doesn't have a claim of right of any kind to be on the premises. It's just like the casino case. So I'm running out of time. I'm going to reserve the last minute for my rebuttal, if that's okay. Thank you. Mr. Coyle. May it please the court. My name is David Coyle. I represent Tom Johnson of Capelli in this matter. We respectfully ask this court to affirm the district court's order denying summary judgment. This case is not about officers having to make split-second decisions in high-pressure situations. This is a case about officers arresting an individual without conducting any sort of investigation, and only after the individual had taken a photo of one of the officers and asked his name in response, the force had been used against him. Could you address what opposing counsel started out with, which is the blatantly contradicted portion? How do you respond to the assertion that the videotape blatantly contradicts what Mr. Johnson testified to? Because I find that portion of the video quite difficult to discern and figure out exactly what happened. Yes, I agree, Your Honor. Ultimately, we find the video is ambiguous. You can't see the full picture of what's happening. I'll point out that Judge Magnuson obviously viewed the video as more favorable to Mr. Johnson's version of events. But it's not just Judge Magnuson that testified, essentially, or that found that the moment at which Johnson was tased was the moment Johnson claimed as opposed to the officers. There's Aaron Shoup, and there's also Mr. Coleman. Mr. Coleman was an employee of 7, and he also testified that the time on the video of which he believed Mr. Johnson was being tased was the same time that Johnson claimed he was being tased. Well, I think they're talking about an immediate tasing, never got up. I mean, how do you address those specific portions of Mr. Johnson's testimony in conjunction with the video? Your Honor, I think the video does not blatantly contradict Johnson's testimony. From the video, it's impossible to tell at that moment is he being tased or, as they claim, is he running away. Just the video, once again, it's not a matter of do you see it and do you look at it and what do you think. It's whether or not it blatantly contradicts the view from one party, and as Judge Magnuson found, it did not. In fact, he found the video supportive of Johnson's position. So needless to say, the parties highly dispute what happened in this incident, but what is undisputed is that Mr. Johnson was obviously tased and pepper-sprayed and pushed and arrested for trespassing and disorderly conduct and a charge of obstruction added later. To put it simply factually. Why don't they have qualified immunity for arresting him if he refused to leave when he was told to leave and the elements of trespass were then satisfied? Why didn't they have least arguable probable cause to seize him? Your Honor, I don't believe that they had arguable probable cause to seize him. You can raise that up, by the way, since you're talking. No, you have to raise the whole button on the side. Up, right where you are, right in front of you. This is good. I'll make this work. Your Honor, your question, why was there not arguable probable cause to arrest Johnson, is ultimately a fact issue. No, probable cause is a legal issue. And if the facts are undisputed that the bouncer told him to leave and he refused to leave, why isn't that arguable probable cause that he committed trespass? Yes, Your Honor, you're right. It is a legal issue. But there's underlying facts that go into that analysis in terms of what are the predicate facts necessary to make that analysis. And here, according to Judge Magnuson and in viewing the evidence most favorable to Mr. Johnson, there is a fact issue on whether or not he refused to leave. The facts show that Webster was talking to Mr. Johnson, and Mr. Johnson explained that he was there waiting for valet and had his valet ticket. And club policy, you are allowed to stay inside the club in that scenario. After Mr. Johnson explained this to Webster and explained that he was allowed to stay in because he was not out of dress code and had been in with the owner on prior occasions wearing the same clothes, Webster walked away. Furthermore, there's a fact issue on to what degree... Arguing with the bouncer at that point, he's saying, no, I don't have to leave, but that's not up to him. I mean, maybe he can be acquitted on that basis, but if the officers know that the staff has told them that he's supposed to leave and he won't, why isn't that arguable probable cause? Your Honor, in this case, I think there's a fact issue on whether or not the officers knew that. There's a fact issue to the degree to which McCarver heard the conversation. Where is that? I mean, I've read Webster's criminal testimony in the criminal case. Where do you get the dispute over what he said? That he summoned, as his routine, the police officers who were present for the purpose of dealing with people who wouldn't leave, and Webster then disengages to avoid a private altercation. Where's the dispute of the fact as to the officers' dealings with Johnson being that? Yes, Your Honor, I think that there's a few fact disputes to point out. Let's start with the one you asserted. There's a dispute as to why the officers engaged with Johnson at all, and who creates that dispute? Yes, so McCarver testified that Webster said he needs to leave. Mr. Johnson was in that same vicinity, did not hear that. There's no evidence to suggest that. Okay, now you're creating no dispute. Is there a witness who says that McCarver didn't engage Johnson because Webster said he won't leave? No, there's not a witness. It's not a disputed fact. Okay, let's go from there. And so at this point, all that there is to go back to Judge Collinson. Why isn't that enough right there, if it's undisputed, that Webster told him to leave? Yeah. He told the officers. Anyway, I think you've said what you have to say about it, unless you want to add anything. Sure. Go ahead. If I could add just a bit more. So it's not that Webster approached him and said Johnson is refusing to leave, and Johnson doesn't have a right to be here, and he's trespassing, and I'd like you to arrest him or I'd like you to remove him from the club. He simply went up to McCarver and said he needs to leave. There wasn't any sort of investment. Why couldn't a reasonable officer take that as shorthand for the rest of the litany that you just listed? Maybe that's a rhetorical question. But my follow-up question is, if there was, assume, I know you don't agree, but assume there was then an arguable probable cause to arrest him for trespass, do you have a case that says the officers have to do the arrest immediately or if they wait 15 minutes there's no probable cause anymore? No, Your Honor, I do not have a case on that point. You don't have a case that says that. Okay. So why wasn't there a probable cause to arrest him outside at the plant if there was inside at the time of the incident before he moved outside? I think two points. One, the officers were inside the club, and I think there's a fact dispute on were they acting as officers or as bouncers. Essentially, under Johnson's version of events, they're acting as the bouncers excluding Johnson from the club. At that point, there's no trespass investigation that's going on. After excluding him, they then wait approximately 15 to 18 minutes, and at that point, while there's not a case directly on point, I believe that that's objectively unreasonable. Do you have even a secondary authority? No, Your Honor. What does Lefebvre say about that? He discusses almost everything under the Fourth Amendment, son. Unfortunately, I don't have a response on that. At what point, if an offense has been committed in the officer's presence and the officer effects a remedy other than arrest and then later arrests, what is the legal premise to say that the dissipated probable cause still persists and justifies a later arrest? I'm not aware of any case law, but I would have assumed that since the district court put that in its reasoning, that counsel would be able to analyze it, help us analyze it. Unfortunately, I don't have any case law on that point. Just once again, it would be objectively unreasonable at that point to arrest after such a long period of time has lapsed. Well, 15 minutes and still on the public premises, the sidewalk, extended premises of seven. Correct, Your Honor. But this wasn't any sort of case of hot pursuit or anything. The officers were inside kind of milling about while Johnson was outside. There was no sort of exigencies that necessitated them to essentially arrest at that point after he had been excluded and was free to leave. Kind of changing topics or somewhat tangentially related, I'd point the court to the Kuehl decision from this court dealing with the fact that officers have a duty to a reasonable investigation. That didn't happen here. There's nothing in the record to suggest that McCarver, Lawler, Zern went back and interviewed Webster to get a better account of whether or not he did have a claim of right to be in the club, whether or not Webster wanted him to be arrested for trespassing, whether he was barred from the club. Mr. Johnson mentioned that he had been in the club on previous occasions with the actual owner of the club and the owner of the club allowed him to be in the club. Was Webster still there? Does the video show him still in the vicinity? Yes, Your Honor. If you look at the video, I believe Webster is still there all through, if I'm not mistaken, through the end of the incident, including when Johnson is tased. And what is the evidence about any interaction between McCarver and him after Mr. Johnson leaves the club? There's nothing that I'm aware of in the record. Surely nothing with regard to investigation of McCarver, Lawler, Zern asking Webster any sort of questions or getting their side of the story as to what happened, their side of the story as to what the conversation between Mr. Johnson and Mr. Webster involved. If there's nothing further on the false arrest claims, I'll move to the excessive force claims. And the test here, of course, is whether or not it's objectively reasonable under the particular circumstances. And I think it's important here. The test, whether it's clearly established that it's objectively unreasonable. Yes, Your Honor. For the qualified immunity analysis, correct, Your Honor. What you cited was the first step, the constitutional question. You're correct. Yes, Your Honor. So looking at the tasing episode, I think it's important to consider the facts either from Judge, as Judge Magnuson found them, or in the light most favorable to Mr. Johnson. And these are the facts related to the tasing. After McCarver swatted the phone out of Johnson's hand, Johnson stood up, bent it over to retrieve his phone from the ground, and sat down on the planter again. Almost immediately after sitting down on the planter again, McCarver tased Johnson. That comes from Judge Magnuson's order. Johnson was not moving aggressively when he was tased. Does the video confirm he was sitting down at the time of the tasing? The video confirms that Mr. Johnson stood up and picked up his phone and sat back down. And then at that point, that's where the video is ambiguous and surely doesn't blatantly contradict Mr. Johnson's testimony that he was tased at that point. And viewing this from the officer's perspective, understanding at the summary judgment stage that that's only part of the inquiry, but from the officer's perspective, what is the relevance of Mr. Johnson's imposing size and obvious strength? Your Honor, well, that might be one bit to consider in the analysis. I didn't see the district court did. There's nothing to suggest, however, though, that he was threatening. The leaping up is... Your Honor, you're referring to leaping up after the phone was knocked from his hand. Yes, but once he stood up, he bent over, picked it up, and sat back down on the planter, not making any further threatening movements or gestures at that point. And so at that point... What did McCarver say about that? I believe McCarver may have said that he felt threatened, but the analysis is an objective one. The officer's subjective... Yes, but the size of the person being confronted is clearly relevant. Size and proximity and possible weapons and so forth, all of that has to be taken into account. And here, the size is dramatic. We have an NFL defensive lineman. Your Honor, I see my time is up, if I may just respond. Once again, yes, Your Honor, you're right that that is a relevant piece of information to consider. The size, that's often included in different opinions. However, it's often included in the context of their behavior. And here, once again, if you view the evidence in the light most favorable to Johnson, as you're required to do, he's not threatening at that point. And that any sort of subjective view would be contradicted by the record and viewing the light most favorable to Johnson. Thank you very much. Thank you. Thank you. Your Honors, I just want to touch on a few points that counsel made regarding if there's a question about whether Mr. Johnson declined to leave. It's in his complaint multiple times that he declined to leave. There's no question about that. Regarding the 15-minute delay, any officer could have arrested Mr. Johnson up to the extent of the statute of limitations for trespass. I think it's in the brief. I think it's at least a year. It might be three years. Fifteen minutes, there's still probable cause. If there's probable cause, objectively, they could have arrested him, and that does not offend the Fourth Amendment. Regarding the question that Judge Kelly had about whether Officer McCarver spoke with the doorman after Mr. Johnson left the inside of 7. The case law says that an officer must do more investigation if it would have clearly exonerated the defendant in the criminal case. This would not. The license to be inside 7 had been revoked by Mr. Webster. Also, if the court has concerns about the tasing, I would request that the court order that the district court or order that the qualified immunity denial be reversed as to everything but the tasing. That would be the remaining issue for trial, if that is the concern about a fact issue that the court has. Thank you very much. Thank you, Counsel. That's a factually complex case, and it's been well-briefed and argued and taken under advisement. The court will be in recess for about 10 minutes.